# CHARLESTON.

HENRY HILL *et als.* *v.* H. G. VENCILL *et al.*

Submitted January 17, 1922.    Decided January 31, 1922.

1.    DEED—TIMBER LAND—*Time for Removing Timber When Deed Silent.*

Ordinarily if a deed for timber does not prescribe the time within which it is to be manufactured into lumber, and the lumber removed from the land, the grantee must remove it within a reasonable time, or lose the benefit of his purchase. (p. 139).

2.  SAME.

    Although such a deed vests title to the timber in the grantee, it does so only upon the condition that he remove it within a reasonable time.   (p. 144).

3.  SAME—*Reasonable Time.*

    What is a reasonable time depends upon the facts and circumstances of each case requiring its application.   (p. 144).

4.  SAME—*When "Reasonable Time" Begins to Run.*

    Where the owner of land deeds all of the timber thereon, together with an undivided interest in the land, amounting to about one-third of the acreage, if partitioned, and without limiting the time in which the timber is to be removed by the grantee, the "reasonable time" in which the timber must be cut and removed begins to run from the date of partition. (p. 144).

5.  TIMBER LANDS—*Removal of Mills and Delay in Resuming Incomplete Operations Create No Presumption That All Timber Deeded Has Been Removed.*

    Where such land and timber is so granted and the grantee a short time thereafter cuts and manufactures into lumber all kinds of timber on the land which could then be sold at a profit, on account of its remote situation from transportation and because of the condition of the lumber market, and then removes his mills and equipment and ceases the operation, but leaves approximately fifty per centum of the timber uncut; causes the remaining timber to be assessed for taxation in his name and pays the taxes thereon; within nine years after ceasing operations, procures a mill site near the land for the manufacture of the timber remaining and secures a contract for transportation of the lumber to be cut from said land over a lumber railroad nearby; but for fourteen years after ceasing operations does not resume such operations; it will not be presumed that he has cut and removed all the timber deeded to him, contemplated by the parties to the deed, in a suit by his grantor for partition of the land. (p. 141).

6.  SAME—*Assessment and Payment of Taxes on Timber Alone Not Sufficient to Cut and Remove.*

    Assessment and payment of taxes on the timber under such circumstances is not alone sufficient to continue the right to cut and remove, but will be considered as evidence of grantees' intention and claim of right to cut and remove.   (p. 142).

Appeal from Circuit Court, Nicholas County.

90 W. Va.

Suit by Henry Hill and others against H. G. Vencill and others. Decree for defendant, and plaintiff appeals.

*Modified and affirmed.*

*McWhorter & Carney* and *Horan & Horan,* for appellant. *G. G. Duff,* for appellees.

Lively, Judge:

The decree brought here by plaintiffs below responded to the prayer of the bill for the partition of 408 acres of land in Nicholas County, allotted to them and defendants their respective portions and appointed commissioners to execute it.      The only cause for complaint by appellants is the adjudication as to the timber of the tract, the decree awarding all of the timber to defendants, Guinn and Vencill.

Whatever interest the parties may have in the timber on the lands depends upon the significance of the terms used in the conveyance of July 12, 1902, by which Henry Hill and Kate Hill, his wife, for a valuable cash consideration, granted to Guinn and Vencill, "all of the timber entire tract and one hundred forty two acres (142) acres of land in fee being Seventy one two hundred and fourths 71/204 undivided of the following real estate **** containing 408 acres." As to the 142 acres there is and can be no controversy; while somewhat imperfectly drawn, the instrument contains all the elements of a deed.      It purports to vest and does vest in the defendants title to the 142 acres, not by metes and bounds, but as an integral part of the entire boundary.      It created a tenancy in common in the 408 acre tract between the parties.      The residue, consisting of 266 acres, remained the property of Hill until April 25, 1903, when he and his wife conveyed 177½ acres to the plaintiff, Abraham Frank, Hill still retaining title to 88 2-3 acres.      Such was the status of the title until September 25, 1917, when Hill and Frank joined in a conveyance of "one fourth (¼) of all their right, title and interest in the timber now growing on the tract" to L. E. McWhorter and H. L. Carney.

Shortly after their purchase, Guinn and Vencill erected or caused to be erected a saw mill on an adjoining farm owned by H. G. Summers, and constructed or caused to be con-

structed roads and ways on the 408 acres to transport the logs to the mill, and the lumber from the mill to market, and in 1903 and 1904 cut, sawed and marketed a large amount of timber, by Vencill stated to be something less than 1,300,000 feet, approximately one-half of the timber. About the year 1905, however, they dismantled and moved the mill from its location and discontinued the lumber operations and have not since resumed them. Guinn and Vencill assert title to all the timber on the entire tract, the 408 acres, and plaintiffs controvert their right to it, except as to the timber on the 142 acres when allotted to them in this suit. Thus the issue appears to be defined with particularity and its solution depends upon the question whether or not defendants can in 1919 successfully claim title to timber on any part of the 408 acres, not within the boundary to be allotted to them in this proceeding.

As the deed of the Hills to Guinn and Vencill on its face imposes no restriction upon the exercise of the right of removal of the timber conveyed, it is an unconditional sale thereof, according to their contention, and if so, they can cut and remove it as and when their convenience or market conditions may at any time require, without regard to the interest and convenience of the plaintiffs, or any injury they may experience as a result of such removal. While our decisions have in some instances touched upon the question so raised, as will hereinafter appear, it was not presented as it now is. Other courts have, but their decisions are not harmonious, as we shall see. Of course the principle which protects freedom of contracts and jus disponendi is not to be ignored, but recognized unless its application produces unreasonable, unnatural and intolerable results, such as would necessarily flow from the exercise of a perpetual claim of right to enter upon the land of another, sever and manufacture into lumber the timber thereon and market the product. Indeed such contracts are so far in general disfavor that even though no time be specified in which the timber shall be removed "it is very uniformly held that there is an obligation to remove the timber within a reasonable time after the making of the contract." *Williams* v. *McCarty*, 82 W. Va. 158, 166. Au-

thority supporting the principle announced in the Williams case abounds.    *McRae* v. *Stillwell*, 111 Ga. 65, 36 S. E. 604, 55 L. R. A. 513; *Smith* v. *Dierks Lumber & Coal Co.*, 130 Ark. 9, 196 S. W. 481; *Beatty* v. *Mathewson*, 40 Can. Sup. Ct. 557, 12 Ann. Cas. 913, 3 British Rul. Cas. 859; *Eastern Kentucky Mineral Co.* v. *Swann-Day Lumber Co.*, 148 Ky 82; *Ferguson* v. *Arthur*, 128 Mich. 297; *Patterson* v. *Graham*, 164 Pa. St. 234, 30 Atl. 247; *Johnson* v. *Powhatan Mining Co.*, 127 Va. 352, 103 S. E. 703; *Kidder* v. *Flanders*, 73 N. H. 345.

"Reasonable time" for removal depends upon the facts in each particular case.    No hard and fast rule can be promulgated.    All of the cases we have examined which announce this doctrine of reasonable time for removal from date of contract, deal with contracts or deeds where the ownership of the land is wholly in the party complaining, and the title to the timber wholly in another.    Here that element does not exist.    Vencill and Guinn own the timber on the entire tract, also a one-third undivided interest in every acre on which their timber is standing.    There is no claim that they have been ousted of possession and lost title; on the contrary their title and common possession is admitted; the suit is for partition.    Where the title to the land and timber is wholly separate, perhaps the best view is that taken in *Beatty* v. *Mathewson*, 40 Can. Sup. Ct. 557, and cases therein cited, holding the grant to the timber to be a defeasible fee which may be lost upon failure to perform the implied condition to remove the timber "within a reasonable time."    But would it not be anomalous to require the owner of the land to remove his own timber therefrom or else forfeit his timber title?    Plaintiffs and defendants, Vencill and Guinn, are tenants in common in the ownership of the land. They hold by several and distinct titles emanating from the same source and have unity of possession, neither one knows his own severalty; they occupy promiscuously. Their possession is per mie et per tout, that is, each of them has the entire possession as well of every part as of the whole. They are "common tenants."    It would serve no purpose to dwell upon their rights and reciprocal duties as such. They

are well known to the legal profession.    One reason for de-
feasance of the title to the timber if not removed within a
"reasonable time" is that it becomes a burden upon the land,
and violates the implied condition that this burden shall be
removed.    But the facts here answer that reason in that
the burden, if any, is upon defendants' own land.    De-
fendants own approximately one-third of the entire tract,
practically one-third of every square foot and inch.  Suppose
it is their purpose not to cut the timber from that portion
which will be eventually set off to them?  A requirement to
cut and remove prior to partition, under pain of forfeiture or
defeasance, would defeat this purpose.    Can we thus con-
trol their discretion in the use of their property?  But it is
insisted that plaintiffs' interest in the land has been unduly
burdened by failure to cut and remove, and that their free
use of the land has been prevented for many years.  It is
also argued that it was not the intention of the parties for
the timber to remain uncut beyond a reasonable time. Plain-
tiffs always had the remedy of partition, after which the
"reasonable time" to remove would be computed.    It was
always within their power and discretion to compel division
and then demand removal of the timber from their specific
portions.    Their failure to sue for division is indicative of
their satisfaction with the status quo.    It was not incumbent
upon defendants to ask for partition.    Moreover,  Henry
Hill seemed to have been satisfied with the common owner-
ship for he it was who created it by his deed.    The record
discloses no reason why the acreage sold to the defendants
could not have been described by metes and bounds at the
time of the sale to them.    Has the interest of plaintiffs in
the land been unduly burdened?    Have they been pre-
judiced or inconvenienced?    The facts answer in the nega-
tive.    The land appears not to be wanted for farming  or
grazing purposes; it is principally valuable for its coal and
timber.    No unreasonable or intolerable conditions have re-
sulted from the presence of the timber. None of the litigants
lived on the land.   It is what is known as "wild land."
Plaintiff Hill says he requested Vencill to remove the tim-
ber in the year 1917, being then of the opinion that defend-

ants owned the timber and had the right to cut it, but, afterwards, upon advice of counsel, came to the conclusion that what timber remained belonged to himself and coplaintiff. This action then followed, in which the bill asserts that all the timber was cut and removed in 1903-4 by defendants. We conclude from his testimony and actions that he did not consider defendants had forfeited their right by cutting a part of the timber, or were precluded from further cutting by abandonment, or had removed all the timber contemplated in the deed. His construction of the contract in 1917 is strongly indicative of his intention and understanding when he made it. All this time plaintiffs were not paying taxes on the timber, and their undivided interest in the land was assessed at $5.00 per acre less because of the assessment of the timber to defendants. They made no claim of any character and did no act which would indicate a claim. Between 1905 and 1909 the timber was not assessed to defendants, an omission explained by Vencill, who attempted to have it assessed to himself for these years but failed because of the dereliction of the county clerk or the assessing officer. Assessment and payment of taxes is indicative of an assertion of ownership. Later, in the year 1914, he secured and recorded a contract with Flynn for a mill site near the land for the purpose of sawing the timber, for a right of way over Flynn's land for a tramway over which to remove the timber, and for transportation of the lumber over Flynn's private railway to a common carrier. These facts strongly indicate his construction of his rights under the deed and militate against the claim of abandonment. The subsequent acts of both parties to the deed evidence a mutual and similar construction of its meaning and intent.

Defendants have never abandoned their land nor their timber. They were always in possession. There had been no ouster. None of the common owners were in actual possession. It will be further observed that the deed does not convey merchantable timber; on the contrary it grants all of the timber.

It may be well to further consider the doctrine of title and "reasonable time for removal." Judge BRANNON said in *Key-*

*stone Company* v. *Brooks,* 65 W. Va. 512: "In case of a deed conveying legal title to timber, though the deed contemplates removal of the timber, there being no limit of time for removal and no clause of forfeiture for failure to remove, title to the timber is not lost to the purchaser." However, later on in the opinion, he says: "I apprehend that the right to keep the timber standing does not endure forever, and thus encumber the land and prevent its cultivation, but must be removed in a reasonable time." As pointed out by Judge RITZ in *Williams* v. *McCarty,* 82 W. Va. 158, there can be no divestiture of the purchaser's title until after the expiration of a reasonable time sufficient for removal. The cases which deal with a grant of timber for a specified time have little application to the questions involved here. The doctrine intimated in some cases that such grant is in effect a license, or lease, has slight weight where the conveyance grants the fee in the timber with no time limit for removal. "Standing timber is land * * * *. The deed granting them the timber amounted to more than a mere license." *Hardman* v. *Brown,* 77 W. Va. 484. See also *Keystone Co.* v. *Brooks, supra;* and *Wilson* v. *Colliery Co.,* 79 W. Va. 279. It is clear upon reason and authority that Vencill and Guinn have title in fee to the timber. The deed cannot be construed otherwise.

While the decisions are uniform as to the right of removal of timber purchased within a reasonable time, the same decisions are in apparently hopeless confusion as to the state of the title in the timber remaining upon the land after the expiration of a period of time deemed reasonable for its removal. As analyzed by Judge RITZ in *Williams* v. *McCarty,* cited, there are four distinct lines of authority. (1) The purchaser of standing timber is granted a mere license to remove it within a reasonable time; (2) a grant of standing timber is a lease of the land for the purpose of timber operations, in which the period of removal is limited to a reasonable time; (3) a deed of timber is a conveyance of real estate, and as such, vests in the grantee absolute title to the trees as a part of the estate; (4) a grant of timber is a defeasible fee, and unless the grantee removes the timber within a reasonable

time after the title vests in him, his title is defeated by the implied condition that the timber will be removed within a reasonable time. In support of this view see *McRae* v. *Stillwell* and *Beatty* v. *Mathewson*, cited; and *Hudnell* v. *East Carolina Lumber Company*, 103 S. E. 893 (N. C.).

As above intimated, we think the fourth class of cases as analyzed by Judge RITZ announces the better doctrine. See also *King* v. *Merriman*, 38 Minn. 47, 35 N. W. 570; *Lockersham* v. *Miller*, 16 Ky. L. Rep. 55; *McComber* v. *Detroit L. & N. Co.*, 108 Mich. 491, 66 N. W. 376, 32 L. R. A. 102; *Johnson* v. *Powhatan Mining Co.*, *supra*.

Applying this doctrine, Vencill and Guinn are vested with defeasible. title to the timber on that portion of the 408 acre tract which may be set off and partitioned to plaintiffs, conditioned upon its removal within a reasonable time after that date. A reasonable time for removal of timber conveyed by deed with no time designated for removal depends upon the facts and circumstances of each case requiring its application. It is a mixed question of law and fact. *Florence P. & G. Co.* v. *Newsome*, 106 S. E. 619; *Patterson* v. *Graham*, 164 Pa. 234; *Western L. & C. Co.* v. *Copper River Land Co.*, 138 Wis. 404; *Beattie* v. *Smith*, 146 Ark. 532. If defendants did not own an undivided one-third interest in the land, we would hold that their reasonable time had expired. But considering that they are tenants in common with plaintiffs, with all the rights and powers incident to that relation, we hold that their title to the timber has not been lost under the circumstances detailed. The reasonable time does not begin to run until after a division of the land. Forfeitures are not favored by equity. They are heavy and harsh and will not be declared or enforced unless justice clearly demands it. *Pyle* v. *Henderson*, 65 W. Va. 39; *Newton* v. *Kemper*, 66 W. Va. 130.

Upon what theory the decree declared the contract between Hill and Abraham Frank, of the one part, and McWhorter and Carney, of the other part, as fraudulent, we fail to perceive. There is not one particle of fraud in its procurement. It is a cloud upon the title of Vencill and Guinn to the timber and should be annulled only in so far as it is a cloud thereon.

We affirm the decree, but modify it by striking out that portion which declares the contract between Henry Hill and Abraham Frank with L. E. McWhorter and H. L. Carney as fraudulent and void.

*Modified and affirmed.*